Case 5:25-cv-00050-JHY-JCH   Document 43   Filed 12/29/25   Page 1 of 19
Pageid#: 289

CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
December 29, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Maurice Dosso, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 5:25-cv-00050 |
| ) | |
| ) | |
| The Coventry Group Community ) | |
| Management, Inc. *et al.*, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM OPINION**

This matter is before the court on Defendants The Coventry Group Community Management, Inc. ("Coventry"), Stonebrook Village HOA, and Keila Navarro's joint motion to dismiss *pro se* Plaintiff Maurice Dosso's complaint, (Dkt. 7), and Defendant ZZ Auto Service Center and Preowned Auto Sales, LLC's ("ZZ Auto") motion to dismiss, (Dkt. 13). Dosso, a homeowner and resident of Stonebrook Village, brings twelve different West Virginia state law claims and one federal Fair Housing Act discrimination claim against Defendants for the alleged retaliatory and discriminatory towing and retention of his vehicle. (Dkt. 1.) For the reasons stated below, the court finds that venue is improper in the Western District of Virginia. Accordingly, the court will transfer the case to the Northern District of West Virginia.

**I.  Background**

**A.  Factual History**[1]

---
[1] The facts in this section are derived from Dosso's complaint. (Compl. (Dkt. 1).) For purposes of resolving the motions to dismiss, the court accepts the facts alleged in the complaint as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Since January of 2012, Plaintiff Dosso has been a resident and homeowner in Stonebrook Village, a West Virginia housing community that is managed by Defendant Coventry. (Compl. ¶¶ 4, 9.) Dosso, along with "all other residents," had been using the roadside parking areas and community parking since his January 2012 arrival to the community. (*Id.* ¶ 11.) To him, "parking policy seemed very liberal," such that "residents could freely park" in these areas. (*Id.* ¶ 10.)

On June 1, 2023, Dosso parked his 2000 White Ford Expedition, which was his principal mode of transportation, in the "common parking areas along roadsides" or the "designated community parking."[2] (*Id.* ¶¶ 10–11, 15.) At the time, the car was "fully operational," "fully registered" with the West Virginia Department of Motor Vehicles, and insured as required by law. (*Id.* ¶ 15.) A few hours later, after getting another vehicle out of his driveway, Dosso found that the Ford Expedition was missing. (*Id.* ¶¶ 11, 15.) Believing it to be stolen, he called the Sheriff's Department. (*Id.* ¶ 11.)

The deputies "arrived on the scene and took hours searching and inquiring" until "they found out late at night that Plaintiff's vehicle had been towed" by Defendant ZZ Auto. (*Id.*) Dosso learned that Defendant Navarro had called ZZ Auto and "authorized it to take away [Dosso's] vehicle." (*Id.*) Dosso had not been notified of the towing before or after the vehicle's removal. (*Id.* ¶ 12.) Furthermore, the area where Dosso's vehicle had been parked "was clearly marked with signage indicating parking is allowed." (*Id.* ¶ 12.) It was across the street from Dosso's living room window, where Dosso has since seen "White homeowners

---

[2] Dosso discusses both the "designated community parking" and the "roadside parking areas" in his complaint. (Compl. ¶¶ 10–11.) However, he is unclear whether these terms refer to the same areas, and if not, where he parked before his car was towed.

- 2 -

park their vehicles there for weeks and sometimes months," in both the direction and opposite direction of traffic. (*Id.* ¶ 21.)

Dosso emailed Navarro and Defendant Stonebrook Village HOA "demanding answers." (*Id.* ¶ 13.) Navarro responded, stating that Dosso's car "was parked on a roadside where parking is expressly authorized" by signage, but that "she ordered the towing because Plaintiff's vehicle was parked opposite of traffic." (*Id.* ¶ 14.) Dosso "demanded" that she return the vehicle. (*Id.* ¶ 16.) He told Navarro that "White residents have been parking in the direction of traffic or opposite of traffic since Plaintiff arrived more than a decade ago and Plaintiff has never seen a White homeowner's car get towed." (*Id.*) In his email, he also warned that this towing was a clear violation of the Civil Rights Act of 1866, 42 U.S.C. §§ 1981–82, and the Fair Housing Act, 42 U.S.C. §§ 3601–19. (*Id.* ¶ 18.)

Dosso proceeded to send "multiple written complaints and requests that his property be returned"—though his complaint does not specify to whom these requests were sent. (*Id.* ¶ 25.) He alleges that, "[o]n information and belief," Defendants towed his car in "retaliation for past clashes and heated exchanges between [Dosso] and the Stonebrook Village HOA." (*Id.* ¶ 26.) These encounters arose from the HOA sending Dosso "bogus and farcical citations either for the front yard grass, the garbage can and/or some other absurd reason." (*Id.*) Dosso also claims that "his White neighbors' properties" had the same or worse grass height or garbage can placement that he had, but that Dosso received citations for these things. (*Id.* ¶¶ 26–27.) He stopped using his garbage can altogether to avoid being cited. (*Id.* ¶ 27.) "White homeowners" continue to leave their garbage can at the road edge after trash pickup, which "sometimes" "obstruct[s] traffic or pos[es] road safety hazards." (*Id.*)

### B. Procedural History

On May 27, 2025, Dosso filed a complaint alleging twelve causes of action and seeking declaratory judgment, compensatory damages, punitive damages, and injunctive relief against Defendants. (*Id.* ¶¶ 33–90.) Count I alleges tortious breach of contract. (*Id.* ¶¶ 33–37.) Count II alleges negligent breach of contract. (*Id.* ¶¶ 38–42.) Count III alleges tortious breach of the covenant of good faith and fair dealing. (*Id.* ¶¶ 43–47.) Count IV alleges negligent breach of the covenant of good faith and fair dealing. (*Id.* ¶¶ 48–52.) Count V alleges "negligent failure to comply with West Virginia notice requirements before towing" under West Virginia Code § 17C-14-13. (*Id.* ¶¶ 53–55.) Count VI alleges negligence. (*Id.* ¶¶ 56–60.) Count VII alleges conversion. (*Id.* ¶¶ 61–64.) Count VIII alleges trespass to chattel. (*Id.* ¶¶ 65–68.) Count IX alleges invasion of privacy. (*Id.* ¶¶ 69–71.) Count X alleges unjust enrichment. (*Id.* ¶¶ 72–75.) Count XI alleges discrimination based on race under the Civil Rights Act of 1866, 42 U.S.C. §§ 1981–82, and the Fair Housing Act of 1968, as amended, 42 U.S.C. §§ 3601–19. (*Id.* ¶¶ 76–81.) Count XII alleges intentional infliction of emotional distress. (*Id.* ¶¶ 82–85.) Count XIII alleges negligent infliction of emotional distress. (*Id.* ¶¶ 86–89.)

On July 14, 2025, Navarro, Stonebrook Village HOA, and Coventry filed jointly a motion to dismiss. (Coventry, Stonebrook Village HOA, and Navarro's MTD (Dkt. 7) [hereinafter "Combined MTD"].) They argue that the complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6) for lack of personal jurisdiction and failure to state a claim upon which relief can be granted. (Dkt. 7-1 at 1.) On July 18, 2025, the fourth Defendant, ZZ Auto, filed a separate motion to dismiss. (Def. ZZ Auto's Mot. to Dismiss (Dkt. 13) [hereinafter "ZZ Auto MTD"].) ZZ Auto seeks to dismiss the complaint

pursuant to Federal Rules of Civil Procedure 12(b)(2) for lack of personal jurisdiction, or in the alternative, improper venue under Rule 12(b)(3). (*Id.* at 1.)

On August 6, 2025, Dosso filed a consolidated response in opposition to both motions to dismiss. (Pl.'s Consolidated Opp. to Defs.' Mots. to Dismiss (Dkt. 17) [hereinafter "Pl.'s Resp."].) On August 13, Navarro, Stonebrook Village HOA, and Coventry filed a reply brief, (Dkt. 20), and ZZ Auto filed a separate reply brief, (Dkt. 18). On the same day, Dosso moved for leave to file a surreply on the grounds that ZZ Auto raised new arguments and factual assertions in its reply. (Dkt. 19.) The Honorable Magistrate Judge Joel C. Hoppe eventually granted this motion in October of 2025, allowing Dosso "to file the sur-reply to the extent it addresses new issues raised in defendant's reply brief."[3] (Dkt. 38.) Dosso has also filed a motion for sanctions, (Dkt. 21), and an amended motion for sanctions, (Dkt. 23), contesting the Defendants' separate filings for the two motions to dismiss.

## II.    Standard of Review

The plaintiff bears the burden of establishing that venue is proper under 28 U.S.C. § 1391. *See Bartholomew v. Va. Chiropractors Ass'n, Inc.*, 612 F.2d 812, 816 (4th Cir. 1979). When responding to a venue challenge "in a case involving multiple defendants and multiple claims," the plaintiff must show that "venue is appropriate as to each claim and as to each defendant." *Hickey v. St. Martin's Press, Inc.*, 978 F. Supp. 230, 240 (D. Md. 1997). Federal Rule of Civil Procedure 12(b)(3) allows a defendant to challenge a plaintiff's choice of venue by moving to dismiss the action for improper venue. Fed. R. Civ. P. 12(b)(3). As an alternative to dismissal,

---

[3] Judge Hoppe denied Dosso's second motion for leave to file a surreply, (Dkt. 25), because in it, Dosso "attempt[ed] to introduce new documents into the record," (Dkt. 39).

if it is "in the interest of justice," a court may transfer the action to a proper venue pursuant to 28 U.S.C. § 1406(a) and 28 U.S.C. § 1404(a). 28 U.S.C. § 1406(a); *Cunningham v. Headstart Warranty Grp., LLC*, No. 3:23-cv-00239, 2024 WL 967665, at *3 (W.D.N.C. Mar. 6, 2024) (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955)).

The plaintiff need only make a *prima facie* showing of proper venue. *Mitrano v. Hawes*, 377 F.3d 402, 405 (4th Cir. 2004). In determining whether this *prima facie* showing has been made, the court construes the facts in the light most favorable to the plaintiff. *Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 366 (4th Cir. 2012). The court may look to evidence beyond the complaint in determining whether a plaintiff has made a *prima facie* showing of proper venue. *Id.* at 365–66; *see Franklin v. Cleo AI Inc.*, 741 F. Supp. 3d 300, 306 (D. Md. 2024), *aff'd*, No. 24-1817, 2025 WL 1540924 (4th Cir. May 30, 2025).

Pursuant to Rule 12(b)(2), a defendant may move to dismiss a complaint for lack of personal jurisdiction over that defendant. Fed. R. Civ. P. 12(b)(2). Once a defendant moves to dismiss under Rule 12(b)(2), the plaintiff has the burden of showing that personal jurisdiction exists. *Grayson v. Anderson*, 816 F.3d 262, 268 (4th Cir. 2016). When "the court addresses the personal jurisdiction question by reviewing only the parties' motion papers, affidavits attached to the motion, supporting legal memoranda, and the allegations in the complaint, a plaintiff need only make a *prima facie* showing of personal jurisdiction to survive the jurisdictional challenge." *Id.* In deciding the personal jurisdiction issue, the analysis "resembles the plausibility inquiry governing motions to dismiss for failure to state a claim under Rule 12(b)(6)." *Hawkins v. i-TV Digitalis Tavkozlesi zrt.*, 935 F.3d 211, 226 (4th Cir. 2019). The court must determine "whether the facts proffered by the party asserting

jurisdiction—assuming they are true—make out a case of personal jurisdiction over the party challenging jurisdiction." *Id.* Further, in deciding whether the plaintiff has made a *prima facie* showing, the court must "take all disputed facts and reasonable inferences in favor of the plaintiff." *Carefirst of Maryland, Inc. v. Carefirst Pregnancy Centers, Inc.*, 334 F.3d 390, 396 (4th Cir. 2003).

### III.    Analysis

#### A. Improper Venue

While courts often address challenges to personal jurisdiction before addressing challenges to venue, they have discretion to analyze venue first "when sound prudential reasons exist for doing so." *Adhikari v. KBR, Inc.*, No. 1:15-cv-1248, 2016 WL 4162012, at *3 (E.D. Va. 2016); *see Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Sucampo Pharms., Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 n.3 (4th Cir. 2006). In cases like this one, where the court's venue analysis "incorporates personal jurisdiction issues" and "venue is found to be improper," it is appropriate for the court to begin by addressing ZZ Auto's venue challenge. *Adhikari*, 2016 WL 4162012, at *3.

The general venue statute, 28 U.S.C. § 1391, declares that a civil action may be brought in any one of the following districts:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Dosso has not made a prima facie showing that venue is proper in the Western District of Virginia, as none of the three § 1391(b) provisions are met in this case.

    1. <u>Subsection 1391(b)(1)—Residency of Defendants</u>

For this court to be a proper venue under § 1391(b)(1), all defendants must be residents of Virginia. For purposes of venue, a natural person is a resident "in the judicial district in which that person is domiciled." 28 U.S.C. § 1391(c)(1). A corporation or business entity, on the other hand, is deemed to be a resident of "any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." *Id.* § 1391(c)(2). Dosso's complaint alleges that venue is proper in this court under 28 U.S.C. § 1391 because the Western District of Virginia "has personal jurisdiction over the principal Defendant 'The Coventry Group Community Management, Inc.,' which is located or headquartered in Winchester, VA." (Compl. ¶ 3.) However, even if this court has personal jurisdiction over Coventry, venue is only proper under § 1391(b)(1) if (1) this court has personal jurisdiction over Coventry, Stonebrook Village HOA, and ZZ Auto ("Entity Defendants"); *and* (2) Defendant Navarro resides in Virginia. The court does not have personal jurisdiction over at least one of the three Entity Defendants, ZZ Auto, such that § 1391(b)(1) may not serve as a basis for proper venue.

When determining whether the court can exercise personal jurisdiction, courts primarily focus on "the defendant's relationship to the forum State." *Bristol-Myers Squibb Co. v. Superior Ct. of Cal., S.F. Cnty.*, 582 U.S. 255, 262 (2017). There are two types of personal jurisdiction that may arise from this relationship: "general (sometimes called all-purpose) jurisdiction and specific (sometimes called case-linked) jurisdiction." *Ford Motor Co. v. Montana*

*Eighth Jud. Dist. Ct.*, 592 U.S. 351, 358 (2021). General jurisdiction is only present "when a defendant is 'essentially at home' in the State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S 915, 919 (2011)). This type enables the court to exercise personal jurisdiction over "any and all claims" brought against that defendant. *Ford Motor Co.*, 592 U.S. at 358 (quoting *Goodyear Dunlop Tires Operations*, 564 U.S at 919). Conversely, specific jurisdiction exists when "there [is] some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958). Specific jurisdiction only allows the court to hear certain claims that "arise out of or relate to the defendant's contacts" with the forum state. *Bristol-Myers Squibb*, 582 U.S. at 262 (cleaned up).

The parties seem to agree that there is no general jurisdiction over ZZ Auto in this case. ZZ Auto declares that it is a West Virginia corporation and attaches exhibits—specifically, an affidavit from the sole member of ZZ Auto and paperwork from the West Virginia Secretary of State—as evidence of its West Virginia incorporation and principal office. (*See* ZZ Auto MTD at 4; Dkt. 13-2; Dkt. 13-1.) Dosso does not assert that ZZ Auto has contacts with Virginia "so continuous and systematic as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations*, 564 U.S. at 919 (internal quotation marks omitted). The "sporadic and de minimis" towing activities that ZZ Auto has occasionally conducted in Virginia, (Dkt. 13-1 ¶ 6), do not constitute "continuous and systematic general business contacts" with the forum state, *Goodyear Dunlop Tires Operations*, 564 U.S. at 929. This court clearly does not have general jurisdiction over ZZ Auto.

Rather, Dosso and ZZ Auto's dispute centers on specific jurisdiction. This court may exercise specific jurisdiction if (1) "such jurisdiction is authorized by the long-arm statute of the state in which it sits," and (2) "the application of the long-arm statute is consistent with the due process clause of the Fourteenth Amendment." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 277 (4th Cir. 2009); *see* Fed. R. Civ. P. 4(k)(1)(A). Virginia's long-arm statute permits personal jurisdiction over nonresident defendants to the full extent allowed by the Fourteenth Amendment Due Process Clause. *UMG Recordings, Inc. v. Kurbanov*, 963 F.3d 344, 350–51 (4th Cir. 2020). As a result, the statutory and constitutional questions "merge into one inquiry" that asks whether the exercise of personal jurisdiction "comports with the strictures of constitutional due process." *Id.* at 351.

Specifically, to satisfy due process requirements, Dosso must show that ZZ Auto has sufficient "minimum contacts" with Virginia "such that 'the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Consulting Eng'rs Corp.*, 561 F.3d at 277 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). The court looks at "the relationship among the defendant, the forum, and the litigation" to ascertain whether minimum contacts exist. *Walden v. Fiore*, 571 U.S. 277, 284 (2014) (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984)). To analyze defendant's "minimum contacts" with the state, the Fourth Circuit employs a three-prong test, which considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *UMG Recordings*, 963 F.3d at 351–52 (quoting *Consulting Eng'rs Corp.*, 561 F.3d at 278).

ZZ Auto's contacts with Virginia clearly do not satisfy the due process requirements. The complaint does not allege that ZZ Auto has made any contact whatsoever with Virginia, much less purposefully availed itself of the privileges of conducting activities in Virginia. Dosso's sole reference to ZZ Auto's activities is the allegation that ZZ Auto towed his vehicle from Stonebrook Village, (Compl. ¶ 11), a community located "in the state of *West Virginia*," (*id.* ¶ 4 (emphasis added)). He does not rebut ZZ Auto's assertions that none of ZZ Auto's offices, facilities, or business operations are located in Virginia. (ZZ Auto MTD at 9.)

Instead, Dosso argues that because ZZ Auto "regularly tows vehicles at the direction of Coventry Group and Navarro" and "benefits from business with Virginia entities," it has minimum contacts sufficient for the Western District of Virginia to exercise personal jurisdiction. (Pl.'s Resp. at 5.) ZZ's mere collaboration with entities headquartered in Virginia—without directing any of its own activities or business at Virginia—is not enough to establish minimum contacts. *See Bristol-Myers Squibb Co.*, 582 U.S. at 268 ("The bare fact that [the defendant] contracted with a California distributor is not enough to establish personal jurisdiction in the State."); *Walden*, 571 U.S. at 286 ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."). Further, any "occasional[]" towing activities that ZZ Auto has conducted in Virginia unrelated to this suit, (Dkt. 13-1 ¶ 6), do not confer specific jurisdiction over Dosso's claims, as those "contacts with [Virginia] [were] not also the basis for [Dosso's] suit." *See ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). Dosso's claims plainly do not "arise out of" ZZ Auto's activities in Virginia. *Id.* at 711–12.

2. Subsection 1391(b)(2)—"Substantial Part of the Events"

- 11 -

Dosso does not show that a "substantial part of the events or omissions giving rise to the claim occurred" in Virginia. 28 U.S.C. § 1391(b)(2). In fact, none of the towing and the HOA policy enforcement events alleged in the complaint occurred in Virginia. (Compl. ¶¶ 9–32.) Other than noting that Coventry "is a property management company based in Winchester, Virginia," (Compl. ¶ 5), the complaint contains no reference to Virginia or any specific event taking place within the Western District of Virginia. Later, in his consolidated response brief, Dosso states that "a substantial part of the events occurred through the actions of Defendants who reside in [the Western District of Virginia]." (Pl.'s Resp. at 7.) For one, the complaint only alleges that Coventry, not all Defendants, is based in this district. And for another, Dosso does not specify a single *event* that actually *occurred in* the Western District of Virginia. He appears to erroneously conflate § 1391(b)(1), venue based on defendants' residence, with § 1391(b)(2), venue based on the *events* giving rise to the lawsuit.

In his surreply, Dosso alleges for the first time that certain "critical events occurred in Virginia," including Coventry and the HOA's "decision-making and authorization of the tow." (Dkt. 19-1 at 2.) Although Judge Hoppe granted Dosso leave to file the surreply, he only did so "to the extent [the surreply] addresses new issues raised in defendant's reply brief." (Dkt. 38.) ZZ Auto's § 1391(b)(2) argument—that venue is improper because Virginia was not the site of a substantial part of the events giving rise to Dosso's claims—was not a new argument in ZZ Auto's reply; ZZ Auto clearly raised this argument in its initial motion to dismiss. (*See* ZZ Auto MTD at 10 ("Venue would also be proper if 'a substantial part' of the events or property giving rise to the suit is located in this district. Neither of these venue provisions are applicable . . . . [N]one of the alleged misconduct occurred in Virginia. Plaintiff, a West

Virginia resident, claims racial discrimination following the towing of his vehicle within West Virginia boundaries.").) As Dosso's arguments do not address new issues raised in ZZ Auto's reply brief, the court will not consider the new § 1391(b)(2) arguments and allegations he makes in his surreply. *See Deutsche Bank Nat'l Tr. Co. v. Fegely*, No. 3:16-cv-147, 2021 WL 1235243, at *3 n.5 (E.D. Va. Mar. 30, 2021).

### 3. Subsection 1391(b)(3)—Fallback Venue Option

Dosso also argues that "[e]ven if ZZ Auto is considered separately, § 1391(b)(3) supports venue where any defendant is subject to personal jurisdiction." (Pl.'s Resp. at 7 (citing *Mitrano v. Hawes*, 377 F.3d 402 (4th Cir. 2004)).) However, Dosso overlooks a threshold requirement for this provision to apply. Subsection 1391(b)(3) only applies as the "fallback option" for venue when "no other venue is proper." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Texas*, 571 U.S. 49, 56–57 (2013).

In this case, § 1391(b)(3) is inapplicable because venue is proper in the Northern District of West Virginia. The events that Dosso alleges as the basis for his claims—the towing of his vehicle, his contact with West Virginia law enforcement authorities, and his receipt of HOA citations for trash and grass violations—all occurred in the State of West Virginia. (Compl. ¶¶ 9, 11–12, 15, 17, 21, 26–32.) Specifically, Dosso's vehicle was towed from Hedgesville, West Virginia to Bunker Hill, West Virginia. (Dkt. 13-1 ¶ 4; *see also* Compl. ¶¶ 4, 21; Pl.'s Resp. at 4.) The investigation into the missing vehicle, injury resulting from Defendants' alleged failure to return the vehicle, and HOA citation enforcement all occurred in Hedgesville, West Virginia, where Stonebrook Village is located and where Dosso resides. (Compl. ¶¶ 4, 11–12, 21, 26–27; Pl.'s Resp. at 4.) Both Hedgesville and Bunker Hill are located

in Berkeley County, West Virginia, which is encompassed in the Northern District of West Virginia. *See* N.D. W. Va. LR Gen. P. 77.02. Accordingly, "a substantial part of the events or omissions giving rise to the claim occurred" in the Northern District of West Virginia, and venue is proper there pursuant to 28 U.S.C. § 1391(b)(2).

Because Virginia is not a proper venue for Dosso's claims under any of the three subsections of § 1391(b), venue in this court is improper, the case must be either transferred or dismissed. *Laios v. MTM Builder/Dev., Inc.*, No. GJH-20-3337, 2021 WL 4478712, at *6 (D. Md. Sept. 30, 2021).

4. Venue Transfer

When venue is improper, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). "Transfer is generally considered to be more in the interest of justice than dismissal and, therefore, doubts should be resolved in favor of preserving the action, particularly where it appears that venue may be properly laid in the proposed transferee district." *Blue Rhino Glob. Sourcing, Inc. v. Best Choice Prod.*, No. 1:17-cv-69, 2018 WL 4784006, at *3 (M.D.N.C. June 20, 2018) (cleaned up). Moreover, a court need not have personal jurisdiction over the defendants to transfer the case. *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466 (1962) ("The language of § 1406(a) is amply broad enough to authorize the transfer of cases . . . whether the court in which it was filed had personal jurisdiction over the defendants or not."). "The analysis of whether a transfer is 'in the interest of justice' is the same under section 1404(a) as it is under section 1406(a)." *Nichols v. G.D. Searle & Co.*, 991 F.2d 1195, 1201 n.5 (4th Cir. 1993) (cleaned up).

The court finds that transfer, rather than outright dismissal, is in the interest of justice. First, dismissal is appropriate in more limited cases where the plaintiff is forum shopping or acting in bad faith by suing in the improper venue. *See Apr. Ademiluyi v. Nat'l Bar Ass'n*, No. GJH-15-02947, 2016 WL 4705536, at *3 (D. Md. Sept. 8, 2016). There is no evidence that Dosso was forum shopping, brought the case in Virginia "to harass defendants," or acted otherwise in bad faith. *Symbology Innovations, LLC v. Lego Sys., Inc.*, 282 F. Supp. 3d 916, 935 (E.D. Va. 2017) (quoting *Cont'l Cas. Co. v. Argentine Republic*, 893 F.Supp.2d 747, 754 (E.D. Va. 2012). Transfer is also favored over dismissal where, as here, the plaintiff is proceeding *pro se*. *See Chegini v. HarborView Mortg. Loan Tr. 2006-12*, No. CV ELH-17-664, 2017 WL 3503672, at *7 (D. Md. Aug. 16, 2017) (collecting cases). Finally, a transfer would save the parties time and expenses associated with refiling the lawsuit. *Id.* (citing C. Wright & A. Miller, *Federal Practice & Procedure*, (3d ed.), § 3827) (considering whether transfer would be more efficient or economical than dismissal).

Next, the court finds that the *entire* case should be transferred. Only ZZ Auto has challenged venue via a Rule 12(b)(3) motion to dismiss. (*See* ZZ Auto MTD at 3.) The other three Defendants do not assert improper venue in their joint Rule 12(b) motion to dismiss for lack of personal jurisdiction and for failure to state a claim upon which relief can be granted. (*See* Combined MTD.) Aside from mentioning that "transfer under 28 U.S.C. § 1404" to West Virginia "may be appropriate," and that "all alleged acts occurred" in West Virginia, they do not discuss venue in their brief. (*Id.* at 2 n.1.) Thus, they have waived their objection to venue in this court. *See* Fed. R. Civ. P. 12(g), (h)(1); *Oldham v. Pennsylvania State Univ.*, 507 F. Supp.

3d 637, 650 (M.D.N.C. 2020). ZZ Auto, on the other hand, clearly preserved its objection to venue by raising it immediately in its motion to dismiss. (ZZ Auto MTD at 3, 5.)

Courts in this circuit have consistently held that a defendant's waiver of the venue objection does not automatically waive the venue objection of their codefendant. *See Dee-K Enterprises v. Heveafil Sdn. Bhd.*, 985 F. Supp. 640, 643–46 (transferring a case for improper venue under § 1406(a) where all but one defendant had waived their objections to venue); *Apr. Ademiluyi v. Nat'l Bar Ass'n*, No. GJH-15-02947, 2016 WL 4705536, at *4 (D. Md. Sept. 8, 2016) (same, but where only one defendant waived their objection to venue); *Gore v. Air & Liquid Sys. Inc.*, No. 1:15-CV-465, 2016 WL 11680149, at *4 (M.D.N.C. June 21, 2016) (same). In other words, ZZ Auto's venue objections are not undermined by the other Defendants' lack of objection.

When venue is proper as to one or more defendants but not for another, the court can either "(1) transfer the entire case to another district that is proper for both defendants, or (2) sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district." *Gore*, 2016 WL 11680149, at *4 (internal quotation marks omitted). Generally, the court "'should not sever if the defendant over whom jurisdiction is retained'—even if that defendant has waived its objection to venue—'is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places.'" *Id.* (quoting *Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994)); *Oldham v. Pa. State Univ.*, 507 F. Supp. 3d 637, 650 (M.D.N.C. 2020).

That is exactly the case here. Severing the claims against ZZ Auto from the rest of the lawsuit would almost surely result in two proceedings involving many of the same issues and

witnesses. *See Oldham*, 507 F. Supp. 3d at 650.  Most of Dosso's alleged twelve causes of action appear to be brought against all four defendants, including ZZ Auto.  (Compl. ¶¶ 43–89.) Further, Coventry is a "central figure in [Dosso's] claims." *Oldham*, 507 F. Supp. 3d at 650; (*see* Compl. ¶ 3 (referring to Coventry as "the principal Defendant").)  "Such duplicative, piecemeal litigation is contrary to notions of judicial economy and efficiency." *Gore*, 2016 WL 11680149, at *4.  To that end, the court will not sever ZZ Auto's claims from the rest of the defendants and will transfer all claims, pursuant to 28 U.S.C. § 1406 and § 1404(a).  *See Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986).[4]

The court will transfer this case to the Northern District of West Virginia because both venue and jurisdiction appear to be proper there with respect to each defendant.  No party disputes that the case could have been brought in the Northern District of West Virginia.  (*See* ZZ Auto MTD at 10 ("The more appropriate venue would be the Northern District of West Virginia."); Combined MTD at 2 n.1.)  Although Dosso disputes ZZ Auto's contention that "all conduct" in this case occurred in West Virginia, (Dkt. 19-1 at 1), he alleges that the towing incident took place at Stonebrook Village in Hedgesville, West Virginia.  (*See* Compl. ¶ 5; Dkt. 17-1 ¶ 1–3.)  For the reasons discussed in Section III.3, venue is proper in the Northern District of West Virginia.  A "substantial part of the events . . . giving rise to the claim occurred" there.  28 U.S.C. § 1391(b)(2).  Simply put, the "heart of this matter is centered in"

---

[4] Although Coventry, Stonebrook Village HOA, and Navarro did not affirmatively move to transfer, all four defendants have had an opportunity to oppose the transfer of the case to the Northern District of West Virginia. *See* 15 *Wright & Miller's Fed. Prac. & Proc.* § 3844 (4th ed. 2013). ZZ Auto raised the potential transfer in its initial motion to dismiss, which gave the three other Defendants an opportunity to oppose transfer in their reply brief or in another filing. Instead, the Defendants appear to support venue transfer to West Virginia in their own combined motion to dismiss. (*See* Combined MTD at 2 n.1.)

West Virginia. *WAKA, LLC v. DCKickball*, No. 1:06-cv-178, 2006 WL 1391422, at *4 (E.D. Va. May 17, 2006).

As for personal jurisdiction, the West Virginia long-arm statute, like Virginia's, is "coextensive with the full reach of due process." *See* W. Va. Code § 56-3-33; *In re Celotex Corp.*, 124 F.3d 619, 627–28 (4th Cir. 1997). Each of the Defendants appears to have minimum contacts with the State of West Virginia for purposes of specific jurisdiction. Coventry, Stonebrook Village HOA, Navarro, and ZZ Auto have each "purposefully directed activities at the forum" *and* "the litigation results from alleged injuries that arise out of or relate to those activities." *In re Aflibercept Pat. Litig.*, No. 1:23-cv-97, 2024 WL 3423047, at *9 (N.D.W. Va. July 9, 2024) (cleaned up). For example, Coventry, Stonebrook Village HOA, and Navarro all manage the West Virginia Stonebrook Village property, and the management decisions regarding HOA citations and towing gave rise to Dosso's alleged injuries. ZZ Auto directed its business to West Virginia when towing Dosso's car, which led to Dosso's alleged injury. (*See* Dkt. 13-1 ¶ 4.)

The court concludes that, in the interest of justice, the case will be transferred to the Northern District of West Virginia. The court need not proceed to determine whether personal jurisdiction is proper in the Western District of Virginia as to every defendant because the case will be transferred for improper venue. *Adhikari*, 2016 WL 4162012, at *3. The court also declines to address the other arguments in Coventry, Stonebrook Village HOA, and Navarro's joint motion to dismiss, (Dkt. 7), and Dosso's outstanding motions for sanctions, (Dkts. 21, 23). Rather, this court leaves these motions for decision by the transferee court.

## IV. Conclusion

For the foregoing reasons, this matter will be **TRANSFERRED** to the United States District Court for the Northern District of West Virginia as to all four Defendants: The Coventry Group Community Management, Inc.; Stonebrook Village HOA; Keila Navarro; and ZZ Auto Service Center and Preowned Auto Sales. Defendant ZZ Auto's Motion to Dismiss pursuant to Rule 12(b)(3) or, in the alternative, to transfer venue, (Dkt. 13), is **GRANTED** to the extent that this Court (1) concludes that venue is improper in this District and (2) exercises its discretion under 28 U.S.C. § 1406(a) to transfer this action to a district where the action could have been brought.

An appropriate Order will issue.

**ENTERED** this __29th__ day of December, 2025.

_____
HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE